Harry F. GULLETT, Petitioner,

v.

STATE INDUSTRIAL COMMISSION of the
State of Oklahoma, and the Special In-
demnity Fund of the State of Oklahoma,
Respondents.

No. 38082.

Supreme Court of Oklahoma.

Nov. 10, 1959.

Leonard Geb, Ponca City, Claud Briggs, Oklahoma City, for petitioner.

Mont R. Powell, Mary Elizabeth Cox, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

BLACKBIRD, Justice.

On May 9, 1955, Harry Franklin Gullett, hereinafter referred to as claimant, filed his amended claim for compensation against his employers, National Zinc Company, a corporation, and International Minerals and Metals Co., a corporation, hereinafter referred to as respondents, and Special Indemnity Fund, hereinafter referred to as the Fund, stating that on December 10, 1954, while in the employ of the above named respondents he sustained an accidental injury arising out of and in the course of his hazardous employment consisting of a physical strain to the body, heat exhaustion and inhalation of an excessive amount of fumes and gases; that he was then a physically impaired person because of previous disability probably aggravated or accelerated by the accidental injury occurring December 10, 1954, which has proved to be permanently, totally disabling.

On June 6, 1956, the case came on to be heard between claimant and the above named respondent National Zinc Company. The trial judge at that hearing after finding that on the 10th day of December, 1954, claimant, while in the employ of National Zinc Company sustained an accidental injury arising out of and in the course of his employment consisting of an injury to his chest, heart, lungs and respiratory tract, further found:

"That as a result of said accidental injury Claimant became temporarily totally disabled and in need of hospital and medical treatment care from the date thereof and continuing until on or

about the 28th day of March, 1955, for which he received payment of $385.00, being at the rate of $28.00 per week for 13¾ weeks; that his temporary disability terminated on said March 28th, 1955, and claimant has received the further sum of $200.00 additional, for which the employer and insurance carrier are entitled to credit on permanent disability; that claimant's wages were such that his weekly compensation rate is $28.00;

"That as a further result of the aforesaid accidental injury the Claimant became and is permanently and totally disabled from the performance of ordinary manual or mechanical labor;

"That Claimant, at and prior to date of accidental injury, was suffering from and is permanently partially disabled as a result of disease; and that as a direct result of the injury and the aggravating effects upon such pre-existing diseased condition Claimant has sustained thirty per cent (30%) of his permanent disability to the body as a whole, and is entitled to compensation for 150 weeks at the rate of $28.00 per week, to be paid by the Employer National Zinc Company, Inc., and its insurance carrier, Hartford Accident and Indemnity Company, or a total sum of $4,200.00, less the $200.00 heretofore paid, and less the Tax and Attorney's fees, all of which should be commuted and paid in a lump sum;

\*　　\*　　\*　　\*　　\*　　\*

"That in accordance with the facts found herein, and by agreement of all parties, the award hereby made should be without prejudice to the right of claimant to pursue his action against the Special Indemnity Fund of the State of Oklahoma, and that for said purpose the State Industrial Commission should reserve and retain jurisdiction for the holding of further hearings and the making of further order

and award based upon facts to be determined as to the liability of the said Special Indemnity Fund."

The trial judge upon such findings awarded claimant compensation against his employer, National Zinc Company and its insurance carrier in the sum of $4,200, less the sum of $200 theretofore paid for temporary partial disability and reserved the right unto claimant to further proceed as against Special Indemnity Fund.

The award was thereafter, and upon notice to counsel for the Fund, settled on joint petition settlement under order entered by the trial judge on June 18, 1956, for the sum of $4,000 in addition to any sums theretofore paid claimant and in addition to the authorized reasonable and necessary medical expenses incurred by claimant by reason of his accidental injury sustained on the 10th day of December, 1954.

On November 6, 1956, the case came on to be heard as against the Fund. The trial judge at that hearing found that claimant was not a physically impaired person at the time he sustained his December 10, 1954, injury and upon such finding entered an order denying an award against the Fund. The order was sustained on appeal to the Commission en banc.

The Commission en banc thereafter on motion of claimant and on the 8th day of November, 1957, vacated its order affirming the above order of the trial judge and set the case for further hearing and argument upon notice to be given to all the parties.

On November 21, 1957, after a full hearing and oral argument, the Commission en banc modified the order of the trial judge appealed from by making the following finding and order:

"That claimant was not a previous impaired person as defined by the Workmen's Compensation Law and that claimant's previous disability and his disability as a result of his last injury still does not constitute claimant

as a permanent total disabled person, whereupon claimant's claim against the Special Indemnity Fund is denied."

Claimant brings the case here to review this order. His first contention is that the finding of the Commission en banc that claimant was not previously impaired person at the time he sustained his December 10, 1954, injury is not supported by the evidence and is contrary to law.

At the original hearing it was stipulated that National Zinc Company was claimant's employer at the time he sustained his injury December 10, 1954, and was a subsidiary of International Minerals and Metals Company.

We deem it unnecessary to discuss the evidence in detail taken at the original hearing as between claimant and respondent National Zinc Company. It is sufficient to say that the evidence establishes that claimant as a result of his injury sustained December 10, 1954, sustained a strain to his body and that he also suffered from the inhalation of excessive fumes and gases causing him some permanent disability. Claimant at that hearing stated that he had been in the employ of respondent National Zinc Company for about seventeen years prior to December 10, 1954; that in the early part of 1953, he contracted flu and pneumonia and he was also informed by his doctor that he had some asthmatic trouble; that he had however completely recovered from such condition and returned to work sometime in April, 1954, and continued to work until he sustained his injury of December 10, 1954.

At the hearing against the Fund he testified that after he returned to work his condition due to his prior sickness grew gradually worse. He became weak in his legs and arms. His arms and hands would go to sleep and he had difficulty in using his legs. It was necessary for him to receive assistance from other employees to complete his shift; that he has not been able to do any work since he sustained his injury December 10, 1954.

Dr. MacK in his deposition taken on the 23rd day of August, 1955, in substance testified: He first saw and examined claimant on January 13, 1953. He then treated him for bronchitis and asthma. He again saw claimant in December, 1953. He found that claimant had responded to the treatment given him; that his chest had cleared up at that time. He again examined claimant on December 10, 1954; that he was then suffering from bronchitis and asthma. It was a very severe case. He treated claimant for some time for such condition but he did not respond to the treatment; that claimant at that time gave him a history of having worked for respondent, National Zinc Company for several years; that after he suffered his first spell of sickness he returned to work for National Zinc Company sometime in April, 1954, and kept on working until the 10th day of December, 1954, at which time he inhaled a considerable amount of furnace fumes and gases and as a result thereof suffered a severe coughing attack and after further testifying in detail as to the nature of treatment administered reached the conclusion that as a result of his sickness and accidental injury sustained on December 10, 1954, claimant was permanently totally disabled.

The doctor again examined claimant on December 31, 1956, and filed a written report and as a result of that examination, which was admitted in evidence by agreement, the doctor stated that claimant, as a result of his sickness and injury sustained on December 10, 1954, is permanently totally disabled; that 30 per cent of that disability is due to the injury sustained on December 10, 1954 and 70 per cent thereof is due to prior sickness. Other doctors who examined claimant in their written reports likewise so found.

There are however no state of facts testified to by Dr. MacK, or statements made in the reports filed by other doctors, tending to establish that claimant was a physically impaired person at the time he sustained his injury December 10, 1954, as that term is defined in Title 85 O.S.1951 § 171. We

shall later in this opinion further discuss this question.

■ Counsel for claimant in the brief further contend that the trial judge at the original hearing, at which hearing the Fund appeared by counsel and participated, found that claimant at the time he sustained his injury December 10, 1954, was a physically impaired person due to prior sickness and as a result of that sickness and his injury sustained on December 10, 1954, claimant was permanently totally disabled; that 30 per cent of that disability was due to the injury sustained by claimant December 10, 1954, and 70 per cent thereof was due to prior sickness and entered an award in favor of claimant, based on 30 per cent disability to the body as a whole, which left 70 per cent thereof to be paid by the Fund; that the above finding and award constituted an adjudication and determination that claimant was, at the time he sustained his injury of December 10, 1954, a physically impaired person; that that award has not been appealed from and is now final and the Fund cannot be heard to say in the hearing against it and before a different judge, that he was not a physically impaired person at the time he sustained his injury of December 10, 1954. We do not agree.

The trial judge at the original hearing made no final award against the Fund from which it could have appealed. At that hearing it entered an award only against claimant's employer and its insurance carrier and held in abeyance for future determination the question of liability as against the Fund. Moreover, the trial judge at that hearing did not find that claimant was a physically impaired person at the time he sustained his last injury. The trial judge at that hearing simply found as above set forth. He did not find that claimant as a result of his prior sickness suffered the loss of sight of one eye or the loss by amputation of the whole or a part of some member of his body, or total or partial loss of a specific member such as is obvious and ap-

parent on examination by an ordinary layman; nor did he find that claimant then had a disability which had been previously adjudicated and determined by order of the State Industrial Commission.

■ In Special Indemnity Fund of State of Oklahoma v. Iven, Okl., 284 P.2d 419, we held:

"A finding of the State Industrial Commission that prior to the time an employee sustained an accidental injury he was afflicted with multiple sclerosis and loss of vision which was disabling to a degree is not a sufficient finding upon which to base a conclusion that the employee was a 'physically impaired person' as defined by 85 O.S.1951, § 171."

In that case we further said:

"The finding of the Commission was evidently based on the report of Dr. R who expressed the opinion that the claimant had about 20 per cent disability due to the subsequent injury, and about 80 per cent due to his degenerated nervous disease. This report did not determine the extent of disability, if any, to a specific member or members resulting in loss or partial loss of use thereof, nor is there any other evidence in the record supplying that information.

"The State Industrial Commission is without jurisdiction to enter an award against the Special Indemnity Fund under the provisions of 85 O.S. 1951 §§ 171 and 172, unless it be shown that at the time of the subsequent injury the claimant was a physically impaired person by reason of having (1) suffered the loss of the sight of one eye; (2) the loss by amputation of the whole or a part of some member of his body; (3) total or partial loss of use of a specific member such as is obvious and apparent from observation or examination by an ordinary layman; and (4) any disability which previously has been adjudged and determined by

order of the State Industrial Commission.

\* \* \* \* \* \*

"The order of the Commission herein fails to meet this requirement. When a claim against the Special Indemnity Fund is based on a physical impairment resulting from a disease, it is not sufficient that the Commission find merely that claimant is physically impaired by the disease. It must find the extent of disability, if any, of the specific member or members affected by the disease, so as to demonstrate by its finding that the claimant was a 'physically impaired person' under the Statute. Only by such finding can the Commission properly determine the liability of the Special Indemnity Fund."

What is there said is applicable here.

Claimant's final contention is that the finding of the Commission en banc to the effect that claimant at the time he sustained his injury of December 10, 1954, was not a previously impaired person as defined by the Workmen's Compensation Law is too indefinite and uncertain for judicial interpretation and the order denying claimant compensation as against the Fund should for this reason be vacated.

We see nothing so indefinite and uncertain as to this finding to justify us in vacating the order.

We conclude that the evidence amply supports the finding of the Commission en banc that claimant at the time he sustained his injury of December 10, 1954, was not a previously impaired person within the meaning of the Workmen's Compensation Law and an order based thereon denying claimant compensation as against the Fund will therefore not be disturbed on review.

Order sustained.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.